UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Dylan S.,<br><br>                    Plaintiff,<br><br>        v.<br><br>Kilolo Kijakazi, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:22-cv-01139-DJA<br><br>**Order** |

Before the Court is Plaintiff Dylan S.'s motion for reversal and/or remand (ECF No. 23) and the Commissioner's cross motion to affirm (ECF No. 26) and response (ECF No. 27). Plaintiff did not file a reply. Because the Court finds that the ALJ erred in not addressing Ana Olivares Psy.D.'s opinion, it grants in part and denies in part Plaintiff's motion for remand and denies the Commissioner's cross motion to affirm. The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.      Background.**

  *A.      Procedural history.*

Plaintiff filed an application for Supplemental Security Income benefits on November 20, 2019 alleging disability commencing on January 1, 2007. (ECF No. 23 at 2). Plaintiff's claims were denied by initial determination on July 31, 2020 and again on reconsideration on January 21, 2021. (*Id.*). Plaintiff requested a hearing before an administrative law judge ("ALJ") and the ALJ issued an unfavorable decision on September 24, 2021. (*Id.*). Plaintiff requested that the Appeals Council review the decision, which request the Appeals Council denied on May 16, 2022, making the ALJ's decision the final agency decision. (*Id.* at 3).

**B.     The ALJ decision.**

In determining Plaintiff's application, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a). (AR 17-25). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 20, 2019 through the application date. (AR 17). At step two, the ALJ found that Plaintiff had the following severe impairments: disorder of the spine, bipolar disorder, anxiety-related disorder, somatic symptom disorder, posttraumatic stress disorder ("PTSD"), and blindness in the left eye. (AR 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (AR 18). In making this finding, the ALJ considered Listings 1.15, 1.18, 2.02-2.04, 12.04, 12.06, 12.07, and 12.15. (AR 12-19).

At step four, the ALJ found that Plaintiff had a residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except,

> the claimant can perform all posturals occasionally, except he can never crouch, crawl or climb ladders, ropes or scaffolds. He is limited to frequent but not continuous bilateral reaching, feeling, fingering, and handling. He must avoid concentrated exposure to pulmonary irritants such as smoke, dust, fumes, odors, gases and poorly ventilated areas. He must avoid concentrated exposure to excessive cold and vibration. He must avoid concentrated exposure to hazards such as hazardous machinery, unprotected heights, and operational control of moving machinery. He is limited to jobs which do not require binocular vision or left-sided peripheral vision. The claimant is limited to simple tasks typical of unskilled occupations, with no production rate pace work, only occasional interaction with supervisors and coworkers, and no interaction with the public.

(AR 20).

At step five, the ALJ found that Plaintiff had no past relevant work, but that there existed jobs in significant numbers in the national economy that Plaintiff can perform including router, marker, housekeeping cleaner, and cutter paster. (AR 23-24). Accordingly, the ALJ found that Plaintiff had not been disabled since November 20, 2019, the date of his application. (AR 25).

## II.    Standard.

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the

Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When a court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has recognized that in appropriate circumstances, courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). The Ninth Circuit has devised a three-part standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1020.

**III.    Disability evaluation process.**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden

shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*.; 20 C.F.R. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments does

not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

**IV.  Analysis and findings.**

  *A.  Whether the ALJ failed to evaluate the medical opinion evidence in the manner required by 20 C.F.R. § 416.920c.*

    1. <u>The parties' arguments.</u>

Plaintiff argues that the ALJ erred by failing to address an opinion dated July 25, 2020 by state agency psychiatric consultant Ana Olivares, Psy.D. (ECF No. 23). In Dr. Olivares' opinion, Plaintiff was limited to simple instructions, simple tasks, occasional interaction with supervisors, and no interaction with coworkers or the public. But the ALJ never acknowledged this opinion. Plaintiff points out that the ALJ analyzed another doctor's opinion—Jack Araza, Ph.D.—while citing to the portion of the record containing Dr. Olivares' opinion. But even if the error was typographical, it is unclear which opinion the ALJ intended to address. Plaintiff argues that this error is not harmless because proper consideration of Dr. Olivares' opinion could have resulted in a more restrictive RFC.

The Commissioner responds that the ALJ did consider Dr. Olivares' opinion, but appears to have made a typographical error in doing so. (ECF No. 26). Although the ALJ only mentioned Dr. Araza's opinion, the Commissioner explains that the ALJ cited to the exhibit containing Dr. Olivares' opinion and discussed Dr. Olivares' opinion that Plaintiff could have no interactions with coworkers or the public. Because Dr. Araza did not share this opinion, the Commissioner asserts that it is clear that the ALJ intended to address Dr. Olivares' opinion. Where the doctors' opinions diverged elsewhere, the Commissioner points out that the ALJ assessed limitations that aligned with the more restrictive limitations between the two, meaning that the ALJ considered both. Finally, the Commissioner asserts that the ALJ's discussion of these doctors' opinions was not harmful error because the ALJ sufficiently addressed supportability and consistency and provided ample explanation for the limitations he ultimately adopted into the RFC.

    2. <u>Analysis.</u>

For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. 20 C.F.R.

§§ 404.1520c(b), 416.920c(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore, the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Even under the new regulations, the ALJ is obligated to consider the opinions from each medical source and cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see Kramer v. Kijakazi*, No. 20-cv-2065-GPC(AHG), 2022 WL 873630, at *4 (S.D. Cal. Mar. 24, 2022). "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

      Here, the Court finds that the ALJ erred because he did not consider *all* medical opinions. The Commissioner offers no authority for the proposition that the ALJ can fail to consider the supportability and consistency of a medical opinion without erring. While the Commissioner argues that the ALJ did consider Dr. Olivares' opinion and simply misattributed that opinion to Dr. Araza, that mistake is not clear from the record. The ALJ cites to both Dr. Olivares and Dr. Araza's opinions when discussing Dr. Araza. (AR 23). And when the ALJ considered the opinion that the Commissioner asserts was Dr. Olivares' wrongfully attributed to Dr. Araza, the ALJ cites neither Dr. Araza nor Dr. Olivares' opinion. Even if the ALJ had misattributed Dr. Olivares' opinion to Dr. Araza, the ALJ did not consider the supportability factor when considering Dr. Olivares' opinion. Instead, the ALJ only considered consistency. Because this

error frustrates meaningful review, the Court finds that the error was not harmless and remands for further proceedings.

> **B.** **Whether the ALJ failed to explain why limitations contained in the opinions he deemed persuasive were not accounted for in the RFC.**
>
> 1. <u>The parties' arguments.</u>

Plaintiff argues that the ALJ failed to explain why opinions he found persuasive were not accounted for in the RFC. (ECF No. 23). Plaintiff addresses two opinions: one by consultative examiner Jeffrey Wood, Psy.D. and one by state agency medical consultant Amanjot Kaur, M.D. Regarding Dr. Wood's opinion, Plaintiff points out that the ALJ found it partially persuasive because it was supported by Dr. Wood's examination. But Plaintiff asserts that if an opinion is well-supported, under 20 C.F.R. § 416.920c(c)(1), it should be "more persuasive." Plaintiff adds that, while the ALJ found one finding in Dr. Wood's opinion—that Plaintiff would be moderately limited in interacting with others—to be consistent with the evidence, the ALJ did not address the consistency of any of Dr. Wood's other findings. Specifically, the ALJ did not address the consistency of Dr. Wood's findings that Plaintiff may need special supervision to concentrate and persist at detailed tasks or that he would struggle to consistently respond appropriately to the pressure associated with a typical work setting. Plaintiff points out that the ALJ's failure to address the remainder of Dr. Wood's findings and include them in the RFC was not harmless because the vocational witness testified that if an individual were unable to consistently complete assigned tasks, all work would be precluded. And because Dr. Woods found that Plaintiff would need special supervision, he would be precluded from maintaining concentration, persistence, and pace to complete tasks independently as required. Plaintiff adds that the ALJ failed to consider Dr. Wood's opinion that Plaintiff would struggle to consistently respond appropriately to the stress and pressure of a work setting, which Plaintiff argues that a limitation to unskilled or "low stress" work would not address.

Regarding Dr. Kaur's opinion, Plaintiff points out that the ALJ found it somewhat persuasive, declaring that Dr. Kaur's opinion was well supported. Dr. Kaur found Plaintiff to have a severe spine disorder and severe vision impairment such that Plaintiff would have limited

near and far acuity, depth perception, accommodation, and field of vision in his left eye. But the RFC was less limited than Dr. Kaur's opinion, simply specifying that Plaintiff could not work in occupations requiring "binocular vision or left sided peripheral vision."

The Commissioner responds that the ALJ sufficiently addressed the supportability and consistency of the ALJ's opinions. (ECF No. 26). And while Dr. Wood found that Plaintiff could not consistently carry out and sustain attention for complex and detailed tasks without supervision, Dr. Wood found that Plaintiff did not need supervision for simple and some detailed tasks. Because the RFC limited Plaintiff to simple tasks, the Commissioner argues that the RFC is even more limited than Dr. Wood's finding. Additionally, the RFC limits Plaintiff to work that has no production rate pace and limits interactions with coworkers and supervisors to only occasionally, which incorporates Dr. Wood's assessment that Plaintiff would have moderate difficulty in responding appropriately to work pressure. In any event, the Commissioner argues, just because the ALJ found Dr. Wood's opinion persuasive did not mean that the ALJ was required to adopt every individual assessment contained within that opinion.

Regarding Dr. Kaur's opinion, the Commissioner agrees that Dr. Kaur found that Plaintiff was limited but points out that Dr. Kaur's opinion was only about Plaintiff's *left* eye. Dr. Kaur found that Plaintiff had 20/20 vision in his right eye with corrective lenses, which the ALJ also noted. The ALJ ultimately explained that Plaintiff would be restricted regarding exposure to work hazards and jobs that did not require binocular vision or left-sided peripheral vision, thus the ALJ provided ample explanation why he did not adopt additional visual limitations. And just because the ALJ found Dr. Kaur's opinion to be somewhat persuasive did not mean that the ALJ was required to adopt each and every assessment in that opinion.

2. <u>Analysis.</u>

The ALJ is responsible for determining a plaintiff's RFC, which is the most a claimant can do despite existing limitations. 20 C.F.R. § 404.1545(a), 404.1546(c). 416.945(a). The RFC assessment must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). It need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing

RFC limitations entirely consistent with, even if not identical to, limitations assessed by the physician. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). But "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling 96-8p. An error that is inconsequential to the non-disability determination is harmless. *See Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). If the errors of the ALJ result in an RFC that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *See id.* at 1052-54; *see also*, *Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *see Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the Court finds that the ALJ did not err because the RFC does not conflict with Dr. Wood or Dr. Kaur's opinions. Plaintiff argues that the ALJ erred by not finding Dr. Wood's opinion more persuasive and by not considering whether each of Dr. Wood's findings was consistent with the record. However, it is not clear that either of these issues were errors. 20 C.F.R. § 416.920c(c)(1) does not mandate that an ALJ must find a supported opinion persuasive, as opposed to partially persuasive. And 20 C.F.R. § 404.1520c(b) requires that the ALJ articulate how it considered the supportability and consistency factors in finding an opinion persuasive. But it does not require the ALJ to consider the consistency of each finding within that opinion.

However, even if the ALJ did err in these regards, the errors would be harmless because the RFC is consistent with Dr. Wood's opined limitations. Dr. Wood's opinion that Plaintiff would have moderate limitations interacting with others is reflected in the RFC limiting Plaintiff to only occasional interaction with supervisors and coworkers and no interaction with the public. Dr. Wood's opinion that Plaintiff may need special supervision to consistently carry out complex and most detailed tasks is reflected in the RFC limiting Plaintiff to simple tasks typical of unskilled occupations. Finally, Dr. Wood's opinion that Plaintiff would have moderate difficulties responding appropriately to work pressure is reflected in the RFC limiting Plaintiff to jobs without production rate pace work. While this last opinion is not as directly reflected in the RFC as the first two, because the Court must defer to the Commissioner's interpretation when the

evidence will support more than one rational interpretation,[1] the Court finds that the ALJ's RFC is supported by substantial evidence.

Regarding Dr. Kaur's opinion, the Court finds that the RFC is consistent with Dr. Kaur's findings that Plaintiff would have limited near and far acuity, depth perception, accommodation, and field of vision in his left eye. The RFC provides that Plaintiff is limited to jobs that do not require bilateral vision or left-sided peripheral vision. This is not inconsistent with Dr. Kaur's finding that Plaintiff has 20/20 vision in his right eye with corrective lenses. In determining the RFC, the ALJ also pointed out that Plaintiff's "allegations of low vision were inconsistent with vision testing showing left eye blindness, but with overall 20/20 vision with corrective lenses." (AR 23). And again, where evidence will support more than one rational interpretation, the Court defers to the Commissioner. The Court thus finds that the ALJ appropriately considered Dr. Wood and Dr. Kaur's opinions and incorporated them into the RFC.

### C. *Whether the ALJ failed to meet his burden at step five because the occupations cited exceed Plaintiff's RFC and the ALJ failed to reconcile the inconsistency.*

1. The parties' arguments.

Plaintiff argues that the ALJ erred at step five because the occupations the ALJ cited—marker, router, cleaner housekeeper, and cutter-paster—all exceed Plaintiff's RFC. (ECF No. 23). Plaintiff argues that marker, router, and cutter-paster all require "frequent" near acuity, meaning that the ALJ erred by failing to incorporate Dr. Kaur's opinions finding Plaintiff to have limited near and far acuity, depth perception, accommodation, and field of vision in his left eye into the RFC. The ALJ also prohibited Plaintiff from ever crouching, but the DOT reveals that crouching is a requirement for the occupation of cleaner housekeeper. So is interaction with the public, which the ALJ prohibited, because the job duties include "render[ing] personal assistance to patrons." Plaintiff asserts that the ALJ's error is not justified by his reliance on the vocational expert's testimony regarding these jobs because the ALJ was required to resolve the conflict

---

[1] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

between the vocational expert's testimony and the DOT. Plaintiff asserts that the error is not harmless because it undermines the determination of non-disability.

The Commissioner responds that Dr. Kaur only assessed limitations in Plaintiff's left eye, but found that Plaintiff had 20/20 vision in his right eye with corrective lenses. (ECF No. 26). And the RFC ultimately contained no limitations in visual acuity. The Commissioner adds that "the decision explained why the ALJ assessed the limitations with regard to Plaintiff's vision that he did," specifically, that Plaintiff was to avoid hazards and jobs that require binocular vision and left-sided peripheral vision. That the jobs of router, marker, and cutter-paster require frequent near visual acuity does not conflict with this RFC. The Commissioner concedes that the cleaner housekeeper occupation precluded crouching and the ALJ thus erred in relying on the occupation. But the Commissioner asserts that the error was harmless because the remaining occupations represent a significant number of jobs.

2.  <u>Analysis.</u>

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work despite her identified limitations, and that (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012); *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Rounds v. Commissioner Social Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (quoting *Zavalin*, 778 F.3d at 845). While the Ninth Circuit has not established a minimum or bright-line number of jobs that constitutes a "significant" number, it did find in *Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 528–29 (9th Cir. 2014) that 25,000 jobs in the regional economy, while a close call, amounts to a significant number of jobs. Finally, the ALJ's step-five finding, like all findings under review by the district court, must be supported by substantial evidence in the overall record to be affirmed. *See Bayliss*, 427 F.3d at 1214 n.1 (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

Here, the Court finds that the ALJ did not err at step five in accepting the vocational expert's testimony regarding jobs. Plaintiff argues that the ALJ erred at step five by accepting jobs that require "frequent" near acuity despite Dr. Kaur's opinion that Plaintiff would have limited near and far acuity in his left eye. But Plaintiff's argument ignores that Dr. Kaur's opinion was limited to Plaintiff's left eye and that the RFC ultimately did not account for acuity, only limiting Plaintiff to jobs that do not require binocular vision or left-sided peripheral vision. And the Court has already found that the RFC is consistent with Dr. Kaur's findings that Plaintiff has 20/20 vision in his right eye with corrective lenses. Plaintiff has provided no reason why a limitation on left eye near acuity would translate to a limitation on near acuity for both eyes, especially given Plaintiff's 20/20 vision in his right eye with glasses. Because the RFC does not include any acuity limitations—which squares with Dr. Kaur's findings—the vocational expert's testimony was not in conflict with the DOT "frequent" near acuity assessments.

Regarding Plaintiff's argument that the cleaner housekeeper job is inconsistent with Plaintiff's RFC limitations that Plaintiff never crouch and have no interaction with the public, the Court finds that the ALJ did err. However, the Court agrees with the Commissioner that the error was harmless because the remaining jobs constitute a significant number. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017). Specifically, marker, router, and cutter-paster total 172,000 positions in the national economy.

### D. *The Court declines to remand for payment of benefits.*

When evaluating whether this case presents the "rare" and "extreme" circumstances justifying a remand for payment, the Court normally applies a three-step test. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). The Court must determine whether: (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence" in the administrative record, for example a claimant's testimony or a medical opinion; (2) the record as a whole is free from conflicts, ambiguities, or gaps and has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful; and (3) it is clear from the record that the ALJ would have to conclude that the claimant is disabled if the improperly rejected

evidence were credited as true." *Id*. at 1100-01, 1103-04 (internal quote marks omitted). However, even if all three elements of the test are met, the Court will remand for further proceedings only if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021; *see also Treichler*, 775 F.3d at 1101 (a court may only apply the credit-as-true rule if "the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding") (internal quotation marks omitted).

The Court denies Plaintiff's request for remand for benefits. Plaintiff's only argument supporting a remand for benefits is that "[a]nother court in this Circuit recently remanded for an award of benefits where the ALJ similarly failed to produce evidence sufficient to carry his burden at Step 5." (ECF No. 22 at 20) (citing *Lucas P. v. Comm'r of Soc. Sec.*, No. 22-cv-0170-TLF, 2022 WL 5240889, at *3 (W.D. Wash. Oct. 6, 2022)). However, here, the Court did not find that the ALJ harmfully erred at step five. The only harmful error that the Court found was the ALJ's failure to consider the medical opinion of Dr. Olivares. Under the three-step test, while the Court finds first that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Olivares' opinion—because the ALJ did not address it at all—the Court finds that further administrative proceedings would be useful at step two and that it is not clear that the ALJ would have to find Plaintiff disabled if Dr. Olivares' opinion was credited as true at step three. Furthermore, the Court's evaluation of the record has created serious doubt that the Plaintiff is, in fact, disabled. The Court thus declines to remand for an award of benefits and instead remands for further administrative proceedings regarding Dr. Olivares' opinion.

///

///

///

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 23) is **granted in part and denied in part.** The Court denies Plaintiff's request to remand for benefits. The Court grants Plaintiff's request to remand for further administrative proceedings. This matter is remanded to the agency for further administrative proceedings regarding Dr. Ana Olivares' opinion.

**IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm (ECF No. 26) is **denied.** The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: September 8, 2023.

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE